# UNITED STATES DISTRICT COURT

# DISTRICT OF NEVADA

| | |
|---|---|
| DIANE DESIO, individually, and on behalf of similarly situated individuals, | |
| Plaintiffs, | Case No.: 2:15-cv-01440-GMN-CWH |
| v. | **ORDER** |
| RUSSELL ROAD FOOD AND BEVERAGE, LLC dba CRAZY HORSE III GENTLEMEN'S CLUB, | |
| Defendant. | |
| RUSSELL ROAD FOOD AND BEVERAGE, LLC dba CRAZY HORSE III GENTLEMEN'S CLUB, | |
| Counterclaimant, | |
| v. | |
| DIANE DESIO, individually, and on behalf of similarly situated individuals, | |
| Counterdefendants. | |

Pending before the Court is the Motion for Conditional Certification, (ECF No. 54), filed by Plaintiff Diane Desio ("Plaintiff"). Defendant Russell Road Food and Beverage, LLC ("Defendant") dba Crazy Horse III Gentlemen's Club ("Crazy Horse III") filed a Response, (ECF No. 55), and Plaintiff filed a Reply, (ECF No. 57).

Also pending before the Court is Plaintiff's Motion to Toll the Statute of Limitations. (ECF No. 62). Defendant filed a Response, (ECF No. 65), and Plaintiff filed a Reply, (ECF No. 66). For the reasons discussed below, Plaintiff's Motion for Conditional Certification is

**GRANTED in part and DENIED in part**, and Plaintiff's Motion to Toll the Statute of Limitations is **GRANTED**.

## I. BACKGROUND

This matter arises out of allegedly unpaid wages owed to Plaintiff for when she worked as an exotic dancer at Crazy Horse III. (*See* Pl.'s Sec. Am. Compl. ("SAC"), ECF No. 50). Plaintiff seeks compensation for these unpaid wages pursuant to the Fair Labor Standards Act ("FLSA"), 29 U.S.C. § 201 *et seq.*, by alleging that Defendant treated her and similarly situated dancers as independent contractors although she and other dancers were allegedly Defendant's employees. (*Id.* ¶ 8–9, 21).

Specifically, Plaintiff alleges that she and other dancers were required to, *inter alia*, pay Crazy Horse III an eighty-dollar dance or house fee immediately upon entry, pay a twenty-dollar stage fee to exempt themselves from having to perform on stage, agree to work a minimum number of hours in a shift often longer than eight hours per day and over forty hours per week without payment of minimum wages or overtime, and they were prohibited from leaving the premises without compensating Defendant with a portion of the tips earned. (*Id.* ¶ 18). Pursuant to this, Plaintiff filed suit in this Court on July 29, 2015, seeking remedies under the FLSA. (*See generally* Compl., ECF No. 1).

Plaintiff filed its SAC on September 16, 2016, and Defendant filed its Answer to the SAC on September 30, 2016, (ECF No. 51). In its Answer, Defendant asserted a counterclaim for declaratory judgment. (Def.'s Ans. & Countercls. ¶¶ 25–31). There, Defendant alleges it entered into an Entertainers Agreement with Plaintiff, wherein Plaintiff agreed that she was an independent contractor and not Defendant's employee, and Plaintiff agreed that she was "not entitled to receive by law or pursuant to [the Entertainers Agreement's terms] any of the benefits or privileges" provided to Defendant's employees. (*Id.* ¶¶ 26–27). Defendant therefore seeks a declaratory judgment "determining that the Entertainers Agreement with

Counterdefendants is valid and enforceable and Counterdefendants were not employees of [Defendant] under the [FLSA]." (*Id.* ¶ 30).

On November 8, 2016, Plaintiff filed the instant Motion for Conditional Certification under the FLSA seeking to certify "all individuals who worked as exotic dancers at Crazy Horse III in the last three years who were classified as independent contractors." (Mot. for Conditional Certification 2:2–3, ECF No. 54). Plaintiff further requests approval of her proposed notice letter and opt-in form to be sent to eligible exotic dancers pursuant to 29 U.S.C. § 216(b). (*Id.* 2:3–5). Additionally, Plaintiff filed the Motion to Toll the Statute of Limitations for all similarly situated dancers at Crazy Horse III starting on the date Plaintiff's Motion for Conditional Certification became fully briefed until the similarly situated individuals can receive notice of their opportunity to opt-in to the case. (Mot. to Toll the Statute of Limitations 2:5–10, ECF No. 62). The Court will address each Motion in turn.

## II. LEGAL STANDARD

### A. Motion for Conditional Certification

Section 216(b) of the FLSA provides that one or more employees may bring a collective action "on behalf of himself or themselves and other employees similarly situated." 29 U.S.C. § 216(b). While a plaintiff may bring an action on behalf of himself and others similarly situated, "no employee shall be a party to any such action unless he gives his consent in writing to become such a party and such consent is filed with the court in which such action is brought." *Id.* "Although § 216(b) does not require district courts to approve or authorize notice to potential plaintiffs, the Supreme Court held in *Hoffman-La Roche* that it is 'within the discretion of a district court' to authorize such notice." *McElmurry v. U.S. Bank Nat'l Ass'n*, 495 F.3d 1136, 1139 (9th Cir. 2007). "[P]laintiffs need show only that their positions are similar, not identical, to the positions held by the putative class members." *Grayson v. K Mart Corp.*, 79 F.3d 1086, 1096 (11th Cir. 1996) (alteration in original) (internal quotation marks omitted). "[P]laintiffs bear the burden of demonstrating a 'reasonable basis' for their claim of

class-wide discrimination." *Id.* at 1097.  "The plaintiffs may meet this burden, which is not heavy, by making substantial allegations of class-wide discrimination, that is, detailed allegations supported by affidavits which successfully engage defendants' affidavits to the contrary." *Id.* (internal quotation marks omitted).

The FLSA does not define "similarly situated."  A majority of courts have adopted a two-step approach for determining whether a class is "similarly situated." *See Padan v. W. Bus. Sols., LLC*, No. 2:15-CV-00394-GMN-CWH, 2016 WL 304303, at *2 (D. Nev. Jan. 25, 2016); *Gamble v. Boyd Gaming Corp.*, No. 2:13-CV-1009 JCM PAL, 2014 WL 2573899, at *3 (D. Nev. June 6, 2014); *Fetrow-Fix v. Harrah's Entm't Inc.*, No. 2:10-cv-00560-RLH-PAL, 2011 WL 6938594, at *6 (D. Nev. Dec. 30, 2011); *Misra v. Decision One Mortg. Co., LLC*, 673 F. Supp. 2d 987, 992–93 (C.D. Cal. 2008); *Leuthold v. Destination Am., Inc.*, 224 F.R.D. 462, 466 (N.D. Cal. 2004); *Pfohl v. Farmers Ins. Grp.*, No. 2:03-cv-03080-DT-RC, 2004 WL 554834, at *2 (C.D. Cal. Mar. 1, 2004).  This approach involves notification to potential class members of the representative action in the first stage followed by a final "similarly situated" determination after discovery is completed.

"Since this first determination is generally made before the close of discovery and based on a limited amount of evidence, the court applies a fairly lenient standard and typically grants conditional class certification." *Misra*, 673 F. Supp. 2d at 993 (citing *Leuthold*, 224 F.R.D at 467; *Pfohl*, 2004 WL 554834, at *2).  At the initial notice stage, "a plaintiff need only make a 'modest factual showing sufficient to demonstrate that [the putative class members] were victims of a common policy or plan that violated the law.'" *Id.*  If the court "conditionally certifies" the class, putative class members are given notice and the opportunity to "opt-in" by a certain deadline. *Id.*

The second stage determination is held after discovery is complete and the matter is ready for trial. *Id.*  At this stage, the court can make a factual determination on the similarly situated question by weighing such factors as: "(1) the disparate factual and employment

settings of the individual plaintiffs, (2) the various defenses available to the defendant which appear to be individual to each plaintiff, and (3) fairness and procedural consideration." *Id.* (citing *Pfohl*, 2004 WL 554834, at *2). If the claimants are similarly situated, the collective action proceeds to trial. *Id.* If claimants are not similarly situated, the court decertifies the class and the opt-in plaintiffs are dismissed without prejudice. *Id.*

### B. Motion to Toll the Statute of Limitations

The Ninth Circuit held in *Partlow v. Jewish Orphans' Home of So. Cal.*, 645 F.2d 757, 760–61 (9th Cir. 1981), *abrogated on other grounds by Hoffmann–La Roche, Inc. v. Sperling*, 493 U.S. 165 (1989), that the FLSA statute of limitations could be equitably tolled. In general, "[e]quitable tolling applies when the plaintiff is prevented from asserting a claim by wrongful conduct on the part of the defendant, or when extraordinary circumstances beyond the plaintiff's control make it impossible to file a claim on time." *Stoll v. Runyon*, 165 F.3d 1238, 1242 (9th Cir. 1999) (citing *Alvarez–Machain v. U.S.*, 107 F.3d 696, 700 (9th Cir. 1996)).

Another court in this district noted in *Small v. Univ. Med. Center of So. Nev.*, 2:13–CV–00298–APG–PAL, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013), that, "[a]s an equitable matter, the inquiry should focus on the fairness to both parties." *See also Dualan v. Jacob Transp. Servs., LLC*, 172 F. Supp. 3d 1138, 1154 (D. Nev. 2016). "As part of the determination of the possible prejudice to the defendant, the court should ask whether the defendant was aware of the potential scope of liability when the complaint was filed." *Id.* That court continued, "[o]f particular relevance here, . . . 'the time for a court to rule on a motion . . . for certification of a collective action in an FLSA case [ ] may be deemed an "extraordinary circumstance" justifying application of the equitable tolling doctrine.'" *Id.*

### III. DISCUSSION

### A. Motion for Conditional Certification

Plaintiff seeks certification of a collective action for her claims under the FLSA alleging that Defendant does not "pay any wages to dancers at Crazy Horse III" and therefore "the

dancers do not receive minimum wage for all hours worked, . . . are not paid overtime for any hours they work in excess of 40 [hours] a week," and are required to pay "unlawful tip-outs . . . to Crazy Horse III employees." (Mot. for Cond. Certification 3:6–7, 3:26–27, 8:1–3).  In support, Plaintiff provides the deposition of Keith Ragano ("Ragano"), the general manager at Crazy Horse III, (Ragano Dep., ECF No. 54-3); the Entertainers Agreement that every dancer must sign to work at Crazy Horse III, (Entertainers Agreement, ECF No. 54-5); and Plaintiff's Declaration, (Desio Decl., ECF No. 56).[1]   Together, Plaintiff offers this evidence to demonstrate that the putative class members were victims of Crazy Horse III's common policy or plan that violated the law. *See Misra*, 673 F. Supp. 2d at 993.

Specifically, when asked whether the dancers all share the same objective of dancing and interacting with customers, Ragano replied "[t]o my knowledge, yes." (Ragano Dep. 46: 15–20).  Moreover, Ragano stated that every dancer must sign the Entertainers Agreement before they begin working at Crazy Horse III. (*See* Ragano Dep. 34:24–35:6).  The Entertainers Agreement provides that dancers are independent contractors, but that they can be terminated at any time and for any reason, that the dancers cannot delegate their work to other employees, and that the dancers cannot negotiate the Entertainers Agreement. (Entertainers Agreement at 2–4); (Desio Decl. ¶ 9).

Defendant argues that the collective action cannot be certified because "Plaintiff has submitted only one . . . declaration and mischaracterized or incomplete deposition testimony to support her Motion." (Resp. 12:19–21).  Additionally, Defendant asserts that "Plaintiff only performed for two (2) days for a total of 14.45 hours" and therefore "Plaintiff never worked a full week or for more than 40 hours." (*Id.* 12:24–26).

---

[1] Although Defendant emphasized in its Response that Plaintiff's Declaration is unsigned in her Motion for Conditional Certification, (*see, e.g.*, Resp. 5:9), Plaintiff later provided a signed Declaration, (ECF No. 56), which the Court will consider.

In cases where courts declined to conditionally certify a putative class, extensive discovery justified a detailed factual inquiry otherwise reserved for the second "decertification" stage. *See, e.g.*, *Luksza v. TJX Companies, Inc.*, No. 2:11-cv-01359-JCM-GWF, 2012 WL 3277049, at *8 (D. Nev. Aug. 8, 2012).  However, because the instant litigation is at the first "notice" stage, and discovery still has months before completion, the Court will apply the lenient standard to Plaintiff's motion, requiring only that Plaintiff "make substantial allegations that the putative class members were subject to a single decision, policy, or plan that violated the law." *Lewis v. Nevada Property 1, LLC*, No. 2:12-cv-01564-MMD-GWF, 2013 WL 237098, at *7 (D. Nev. Jan. 22, 2013).

The Court finds that Plaintiff has made a sufficient threshold showing that dancers at Crazy Horse III are similarly situated for purposes of conditional certification. *See Dualan*, 172 F. Supp. 3d at 1154 ("Conditional certification 'require[s] little more than substantial allegations, supported by declarations or discovery, that the putative class members were together the victims of a single decision, policy, or plan.'").  Dancers who worked at Crazy Horse III were classified as independent contractors and were not paid any wages; the dancers were only paid by customers for the private dances that the dancers performed. (Desio Decl. ¶¶ 2, 8); (Ragano Dep. 33:19–34:1, 41:21–23).  Moreover, the dancers had to pay Crazy Horse III to work there. (Desio Decl. ¶¶ 6–7); (Ragano Dep. 18:24–19:1).

Together, these uniform policies and procedures that contest the level of employment and allege FLSA violations are sufficient to render the dancers similarly situated for certification.  Defendant's arguments concerning the amount of time Plaintiff worked is not suitable for this stage of certification. *See Dualan*, 172 F. Supp. 3d at 1154 ("At this procedural stage, the court does not resolve factual disputes, decide substantive issues going to the ultimate merits, or make credibility determinations.").  The Court therefore finds that Plaintiff has demonstrated sufficiently for this stage of the certification process that the potential opt-in

plaintiffs who were or are exotic dancers for Defendant were subject to Defendant's same policies that allegedly violate the FLSA as Plaintiff claims. Accordingly, the Court grants conditional certification.

### 1. Form of Collective-Action Notice

When an FLSA collective action is conditionally certified, a district court may authorize the named plaintiffs to send notice to "all potential plaintiffs" and "may set a deadline for plaintiffs to join the suit by filing consents to sue." *Does I thru XXIII v. Advanced Textile Corp.*, 214 F.3d 1058, 1064 (9th Cir. 2000); *see also Hoffmann–La Roche Inc.*, 493 U.S. at 169–72. Plaintiff attached her proposed notice as Exhibit A to the Motion for Conditional Certification, (ECF No. 54-1). Defendant objects to Plaintiff's proposed notice for the following reasons: (1) Plaintiff should only receive information on putative class members for two years prior to the filing of the Complaint instead of three years; (2) Plaintiff should only be permitted to send notice by mail and e-mail and not through text message; (3) Defendant should not be required to post the notice on its premises; (4) there should be a forty-five-day opt-in period instead of ninety days; and (5) the language of Plaintiff's proposed notice is misleading. (Resp. at 15–21). The Court will address each in turn.

#### a. Class Members from Two Years Prior

Plaintiff's proposed notice states that "you may be eligible to participate in this case because you have worked as an exotic dancer at Crazy Horse III during the last three years." (Proposed Not. at 2, Ex. A to Mot. for Cond. Certification). Defendant argues that "three years is overly expansive because there is no evidence and Plaintiff's Motion fails to identify any evidence that Defendant engaged in willful violations of the law." (Resp. 15:15–17). However, Defendant's argument is a non sequitur. Defendant does not show how allegedly failing to engage in willful violations of the law necessitates a two-year period rather than a three-year period. Therefore, the Court denies Defendant's proposed change from three years to two.

**b.     Notice by Mail and E-mail**

In her Motion, Plaintiff seeks to contact putative class members primarily by mail and e-mail. (Mot. for Cond. Certification 15:24–25).  For notices that are returned as undeliverable, "Plaintiff requests leave to obtain from Crazy Horse III the telephone numbers for all class members, so that updated addresses can be obtained to resend notices." (*Id.* 15:26–28). Additionally, Plaintiff seeks permission "to send text message notifications to the dancers with a link to a website containing the [n]otice form." (*Id.* 16:19–20).  Plaintiff asserts that this is "especially appropriate in light of the transient nature of many dancers." (*Id.* 16:20–21).

Defendant argues that "it is unclear what would be provided to any conditionally certified collective members in a notice 'email' [ ] and what the subject line of such an email would say." (Resp. 17:2–4).  Additionally, Defendant argues that "[n]otice via both text message and email is unnecessary and redundant, and Defendant further objects to providing any telephone numbers for such purpose." (*Id.* 17:16–17).

The Court, however, grants Plaintiff's request to contact members by mail and e-mail and to send text message notifications.  Specifically, the Court finds in its discretion that due to the transient nature of dancers, contact via text messages does not seem "unnecessary and redundant." *See Hoffmann–La Roche*, 493 U.S. at 170 (abstaining from reviewing the contents of a proposed notice because such details are left to the broad discretion of the trial court); *cf. Dualan*, 172 F. Supp. 3d at 1154 (reserving ruling on whether the potential opt-in plaintiffs' phone numbers should be tendered because plaintiffs had not demonstrated a need for the telephone numbers).  As such, the Court grants Plaintiff's request to provide notice through mail, e-mail, and text messages and therefore requires Defendant to provide Plaintiff with the names, last-known addresses, and telephone numbers for all dancers for the last three years.

### c. Post the Notice on the Premises

Plaintiff requests that Defendant should also post the notice at Crazy Horse III "in an area conspicuous to the dancers." (Mot. for Cond. Certification 17:3–4). Defendant asserts that "such a posting is unnecessary and will be prejudicial to actual employees of Defendant." (Resp. 19:15–16). Defendant continues that "[p]osting a notice that alleges multiple significant violations regarding wages and overtime, when there has been no decision against Defendant, and Defendant has not had the opportunity to defend itself, will only serve to cause unrest and possibly significant problems between the dancers and others." (Resp. 15:2–6).

However, the Court finds that posting the notice is a cost-efficient way to notify potential opt-in plaintiffs of the action; this method has been endorsed by numerous district courts in this circuit, and the Court finds it appropriate here. *See, e.g.*, *Dualan*, 172 F. Supp. 3d at 1152; *Coyle v. Flowers Foods Inc.*, No. CV-15-01372-PHX-DLR, 2016 WL 4529872, at *7 (D. Ariz. Aug. 30, 2016). As such, the Court requires Defendant to post the notice at Defendant's business address in a conspicuous place where dancers can see it.

### d.   Forty-Five-Day Opt-In Period

Plaintiff seeks that "class members have the standard 90-day window to return a signed consent form." (Mot. for Cond. Certification 17:12–13). Defendant argues that "Plaintiff provides no justification for requesting three months," and that forty-five days "gives persons seeking to join an opportunity to receive the notice, contact either Plaintiff's counsel or seek out their own counsel for advice, and send back the opt-in form." (Resp. 20:19–25). The Court agrees that Plaintiff needs time due to the potential size of the class to permit recipients of the notice sufficient time to consider it and their options. However, the Court also has concerns as to the amount of time this case may potentially take if Plaintiff is given a ninety-day period to construct the class before moving forward. As such, the Court finds that a sixty-day return deadline is reasonable, and this deadline will begin running on the date that the notice is

mailed. *See Cardoza v. Bloomin' Brands Inc.*, No. 13-CV-1820-JAD-NJK, 2014 WL 5454178, at *4 (D. Nev. Oct. 24, 2014) (stating that a sixty-day period to a ninety-day period is routinely approved by the Ninth Circuit).

### e. Misleading Language

Defendant alleges that Plaintiff's notice is misleading in four ways: (1) the notice states in bold that it is "Court authorized" three separate times; (2) the notice is addressed to a "current or former worker of Crazy Horse III Gentlemen's Club;" (3) the notice contains no statement of Defendant's position; and (4) the notice is one-sided. (Resp. at 21–23).

As to the first issue, the notice's heading is titled in bold, "**COURT-AUTHORIZED NOTICE**," the notice states bolded in the first paragraph, "**This is a court authorized notice**," and the notice concludes in bold with "**This notice has been authorized by the United States District Court for the District of Nevada**." (Proposed Not. at 2–3, Ex. A to Mot. for Cond. Certification). In *Hoffmann–La Roche Inc. v. Sperling*, the Supreme Court cautioned, "[i]n exercising the discretionary authority to oversee the notice-giving process, courts must be scrupulous to respect judicial neutrality. To that end, trial courts must take care to avoid even the appearance of judicial endorsement of the merits of the action." *Hoffmann–La Roche*, 493 U.S. at 174. Plaintiff's consistent allegations that the notice is authorized by this Court creates the appearance of judicial endorsement of this action instead of just the form of the notice. As such, the Court agrees that the notice is misleading in this regard and instructs Plaintiff to omit all the references to the Court from the notice.

Turning to the second issue, the Court agrees that who the notices are addressed to is misleading because it "could easily be interpreted as inclusive of any and all persons who did any type of work at Defendant's premise or for Defendant." (Resp. 22:2–4). The Court therefore orders, and Plaintiff agrees, that the notices must be addressed to "current or former exotic dancers." (*See* Reply 10:12–13). Moreover, Plaintiff agrees to "add a sentence stating

the Defendant denies the allegations made by Plaintiff," and "to remove references to overtime pay" from the notice. (*Id.* 10:10–12).  This rectifies Defendant's third issue.

As to the fourth issue, Defendant argues that the notice "does not lay out the impact of opting-in, including that they will likely be asked to participate in the litigation, and provide personal, private information through the discovery period, and testify during deposition and/or trial." (Resp. 23:3–7).  Plaintiff's notice states: "If you do participate in the case, you will be bound by any ruling entered by the court," and "You may also be asked to be a witness or to provide evidence in the case." (Proposed Not. at 2, Ex. A to Mot. for Cond. Certification).  The Court finds this sufficient.

Further, Defendant argues that the notice "contains no language notifying potential opt-in plaintiffs that they may, under certain circumstances, be liable for fees and/or costs should Defendant prevail." (Resp. 23:9–11).  The Court finds this unpersuasive as any reference to potential liability for Defendant's costs could serve only to "discourage participation in the lawsuit." *See Green v. Exec. Coach & Carriage*, 895 F. Supp. 2d 1026, 1030 (D. Nev. 2012).  As such, the Court finds Plaintiff's notice sufficient as to the impact of opting-in to the lawsuit.

### B.  Motion to Toll the Statute of Limitations

Plaintiff asks the Court to equitably toll the statute of limitations from the date that Plaintiff's Motion for Conditional Certification became ripe until notice is disseminated to the potential plaintiffs. (Mot. to Toll the Statute of Limitations ("Mot. to Toll") 2:5–10, ECF No. 62).  Defendant argues that it "should not be inequitably punished by the tolling of the statute of limitations merely because of the mechanisms of Federal Court." (Resp. to Mot. to Toll 3:17–19, ECF No. 65).  This District generally holds that "the time for a court to rule on a motion . . . for certification of a collective action in an FLSA case  [ ] may be deemed an 'extraordinary circumstance' justifying application of the equitable tolling doctrine." *Small v.*

*Univ. Med. Center of So. Nev.*, 2:13–cv–00298–APG–PAL, 2013 WL 3043454, at *3 (D. Nev. June 14, 2013); *Dualan*, 172 F. Supp. 3d at 1154.

Because the Motion for Conditional Certification has been ripe since December 2, 2016, and unresolved for close to nine months, the potential opt-in plaintiffs could be unfairly prejudiced by the Court's delay in resolving the Motion. Moreover, only Defendant possesses information on the identity of the people who fall within the scope of this collective-action group. The Court therefore grants Plaintiff's Motion and tolls the statute of limitations starting thirty days after Plaintiff's Motion became ripe, or January 2, 2017. Additionally, "to counter[ ] the advantage defendant[ ] would otherwise gain in withholding potential plaintiffs' contact information until the last moment[,]" the tolling continues until Defendant provides the requisite contact information to Plaintiff's counsel. *Small*, 2013 WL 3043454, at *3. If a plaintiff opts in before the date of Defendant's compliance, the tolling period for that plaintiff runs from January 2, 2017, until the date of that plaintiff's filing of written consent to opt-in with the Court.

### IV.     CONCLUSION

**IT IS HEREBY ORDERED** that Plaintiff's Motion for Conditional Certification under FLSA, (ECF No. 54), is **GRANTED in part and DENIED in part**. Specifically, the Court grants conditional certification and grants Plaintiff the ability to issue notice to potential class members for the past three years. Moreover, the Court grants Plaintiff's request to provide notice through mail, e-mail, and text messages, and therefore requires Defendant to provide Plaintiff with the names, last-known addresses, and telephone numbers for all dancers for the last three years. The Court additionally requires Defendant to post the notice at Defendant's business address in a conspicuous place where the dancers can see it. Finally, the Court finds Plaintiff's notice sufficient as to the impact of opting-in to the lawsuit.

However, the Court finds that a sixty-day return deadline is more reasonable than a ninety-day or forty-five-day return deadline, and therefore denies Plaintiff's request for ninety-days. The sixty-days will begin running on the date that the notice is mailed.

The Court further denies portions of Plaintiff's proposed notice and requires that Plaintiff must edit it to include the following: (1) Plaintiff must omit all the references to the Court that are currently provided in the notice; (2) the notices must be addressed to "current or former exotic dancers;" and (3) Plaintiff must add a sentence stating the Defendant denies the allegations made by Plaintiff and must remove references to overtime pay.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Toll the Statute of Limitation, (ECF No. 62), is **GRANTED**. The statute of limitations for Plaintiff's FLSA claims is tolled from January 2, 2017, until Defendant provides the requisite contact information to Plaintiff's counsel. If a plaintiff opts in before the date of Defendant's compliance, the tolling period for that plaintiff runs from January 2, 2017, until the date of that plaintiff's filing of written consent to opt-in with the Court.

**DATED** this __29__ day of September, 2017.

_____
Gloria M. Navarro, Chief Judge
United States District Judge